## UNITED STATES v. WIBORG et al.

### (District Court, E. D. Pennsylvania. February 27, 1896.)

1. NEUTRALITY LAWS—MILITARY EXPEDITION—REV. ST. § 5286.
   In order to constitute a military expedition, within the meaning of Rev. St. § 5286, prohibiting the organization, etc., of such expeditions within the United States against the territory of a foreign prince or state, it is not necessary that the men shall be drilled, put in uniform, or prepared for efficient service, nor that they shall have been organized, according to the tactics, as infantry, artillery, or cavalry; but it is sufficient that they shall have combined or organized, within the United States, to go to the foreign territory and make war on the foreign government, either as an independent body, or in connection with others, and have provided themselves with the means of doing so; and such provision, as by arming, etc., is itself probably not essential.

2. SAME—INDIVIDUAL ACTS.
   It is not a crime or offense against the United States, under the neutrality laws, for individuals to leave the country with intent to enlist in foreign military service; nor is it an offense to transport persons out of the United States, and land them in foreign countries, when such persons intend to enlist in foreign armies.

3. SAME—TRANSPORTING ARMS.
   Nor is it an offense against the laws of the United States to transport arms, ammunition, and munitions of war from the United States to a foreign country, whether they are to be used in war or not, and the shipper or transporter only runs the risk of capture, seizure, etc.

4. SAME—MEN AND ARMS IN SAME SHIP.
   Nor is it an offense against the laws of the United States to transport to a foreign country, on the same trip, men intending to enlist in foreign armies and munitions of war, provided the persons transported have not combined and organized themselves, in the United States, to make war on a foreign government.

5. SAME—AIDING MILITARY EXPEDITION—KNOWLEDGE.
   A defendant charged with a violation of Rev. St. § 5286, in aiding a military expedition against a foreign state by transporting it to its destination, cannot be convicted unless he is shown to have known that the persons transported constituted a military expedition.

6. SAME—ACTS BEYOND JURISDICTIONAL LIMITS.

Defendants, who are officers of a foreign vessel, charged with violation of Rev. St. § 5286, in aiding a military expedition against a foreign state by transporting it to its destination, cannot be convicted if it appears that the persons transported were taken on board the vessel at sea, beyond the jurisdiction of the United States, unless it is shown that the defendants left the shores of the United States under an agreement to provide the means of transporting the expedition and to transport it.

This was an indictment, under Rev. St. § 5286, against J. H. S. Wiborg, Jens P. Peterson, and Hans Johansen, master and mates of the ship Horsa, for beginning and setting on foot, etc., within the United States, a military expedition against the dominions of a foreign prince with whom the United States were at peace. Trial was had February 25–28, 1896.

Ellery P. Ingham and Robert Ralston, for the United States.
Charles L. Brown and Wm. W. Ker, for defendants.

BUTLER, District Judge (charging jury). The defendants having been at the time in question officers of the ship Horsa, the first as captain and the others as mates, are indicted jointly and separately, in which indictment it is charged "that within the territory and jurisdiction of the United States they did organize and set on foot and provide and prepare the means for, a certain military expedition and enterprise to be carried on from thence against the territory and dominions of a foreign prince, to wit, the Island of Cuba, the said Island of Cuba being then and there the territory and dominions of the king of Spain, the said United States being at peace with the said king, contrary to the act of congress in such case made and provided."

The evidence heard would not justify a conviction of anything more than providing the means for or aiding such military expedition by furnishing transportation for the men, their arms, baggage, etc. To convict them you must be fully satisfied by the evidence that a military expedition was organized in this country to be carried out as and with the object charged in the indictment, and that the defendants, with knowledge of this, provided means for its assistance, and assisted it, as before stated.

Thus you observe the case presents two questions. First, was such military expedition organized here, in the United States? Secondly, did the defendants render the assistance stated, here, with knowledge of the facts?

In passing on the first question it is necessary to understand what constitutes a military expedition within the meaning of the statute. For the purposes of this case it is sufficient to say that any combination of men organized here to go to Cuba to make war upon its government, provided with arms and ammunition, we being at peace with Cuba, constitutes a military expedition. It is not necessary that the men shall be drilled, put in uniforms, or prepared for efficient service; nor that they shall have been organized as or according to the tactics or rules which relate to what is known as infantry, artillery or cavalry; it is sufficient that they shall have combined and organized here to go there and make war on the

foreign government, and have provided themselves with the means of doing so. I say provided themselves with the means of doing so because the evidence here shows that the men were so provided. Whether such provision, as by arming, etc., is necessary need not be decided in this case. I will say, however, to counsel that were that question required to be decided I should hold that it is not necessary.

Nor is it important whether they intended to make war as an independent body or in connection with others. Where men go without combination and organization to enlist as individuals in a foreign army they do not constitute such military expedition, and the fact that the vessel carrying them might carry arms as merchandise would not be important.

I have said more on this subject than the facts of this case require simply because of the numerous points presented by the defendants, on which the court is asked to charge. These points I will now dispose of. The court is asked to say:

"(1) It is not a crime or offense against the United States under the neutrality laws of this country for individuals to leave the country with intent to enlist in foreign military service, nor is it an offense against the United States to transport persons out of this country and to land them in foreign countries when such person has an intent to enlist in foreign armies."

As a general proposition this is true, and the point is affirmed.

"(2) It is no offense against the laws of the United States to transport arms, ammunition and munitions of war from this country to any other foreign country, whether they are to be used in war or not; that in such case the shipper and transporter of the arms, ammunitions and munitions of war only runs the risk of capture, seizure," etc.

This is also true. No military expedition would exist in such case.

"(3) It is no offense against the laws of the United States to transport persons intending to enlist in foreign armies and munitions of war on the same trip; that in such case the persons transported and the shipper and the transporter of the arms and munitions of war only takes the risk," etc.

This is true, provided the persons referred to herein had not combined and organized themselves in this country to go to Cuba and there make war on the government. If they had so combined and organized and yet intended when they reached Cuba to join the insurgent army and thus enlist in its service, and the arms were taken along for their use, they would constitute a military expedition, as before described, and the transportation of such body of persons from this country, for such a purpose, would be an offense against the statute.

The fourth, fifth, sixth, seventh, eighth and ninth points are fully answered by what has been said.

"(10) Even if the jury do find that the men taken on board were an organized military force with officers, as infantry, cavalry or artillery, the jury cannot find the defendants guilty unless the jury also find that the defendants knew that they were such a military organization as infantry, cavalry or artillery, constituting a military expedition or enterprise against the kingdom of Spain."

As before stated, to justify conviction of the defendants the jury must be fully satisfied that the defendants knew that the men constituted a military expedition such as I have described.

The eleventh point has been fully answered by what the court has said.

The twelfth point is a very important point, and is as follows:

"(12) If the jury find that when the defendants left Philadelphia, and until after they had passed beyond the jurisdiction of the United States, they were ignorant of the fact that they were to transport the men in question, with their arms and provisions, and find that the point off Barnegat, where the men in question were taken aboard, was beyond the jurisdiction of the United States, in other words, beyond the three-mile limit, and find that the vessel was sailing under a Danish flag, then and in that case they will find the defendants not guilty."

This point raises the question whether the defendants committed an offense against the statute if the only aid which they furnished the expedition was furnished out at sea, beyond the jurisdiction of this country; and I instruct you that if the only aid furnished the vessel, being a foreign vessel, was so beyond our jurisdiction, they did not commit an offense and must consequently be acquitted. They allege that the point off Barnegat where the men were taken on board was not within three miles of our shore. If this is true, and the defendants did not start from our shore under an agreement to provide the means for transporting and to transport the men, but were ignorant of the object of going to Barnegat until they reached there, they cannot be convicted.

If, however, they entered into an arrangement here to furnish and provide the means of transportation, and provided it, they are guilty, if this was a military expedition, although the men were not taken aboard and the transportation did not commence until the ship anchored off Barnegat.

"(13) It is the duty of the government to satisfy the jury beyond a reasonable doubt that the men and arms and ammunition taken aboard the steamship Horsa was a military expedition or enterprise from the United States against the kingdom of Spain, and also that the defendants knew or shut their eyes to the fact that it was a military expedition or enterprise from the United States against the kingdom of Spain, and if the jury have from the testimony any reasonable doubt upon either of these questions of fact the jury will find the defendants not guilty."

This point is affirmed. I trust the jury understand it. To convict the defendants it is necessary that the government shall have satisfied your minds beyond a reasonable doubt that this was such a military enterprise, and that the defendants when they started knew it. Otherwise they are not guilty.

Now did the men taken on board the Horsa off Barnegat constitute a military expedition? In other words, had they combined, organized and armed themselves to go to Cuba and there make war on its government? A rebellion is, and was at the time, in progress in that country. The evidence justifies the conclusion that the men were principally Cubans. They came on board the vessel in a body, and appeared to be acting in concert under an organization or understanding of some description. They were armed, having rifles and cannon, and were provided with ammunition and other supplies. Some of them who were able to speak English declared that they were Cubans going to Cuba to fight the Spanish, and if these men were in combination to do an unlawful act what was said by any

of them at the time in carrying out their purpose was evidence against them all as to the nature of the expedition. When the vessel reached the coast of Cuba they lowered boats, which had been taken along on their account and for their use, got into them with their arms, ammunition and other provisions, and left the ship, which had undertaken to tow them some distance further, but was frightened off by the appearance of a light which was supposed to be that of a Spanish man-of-war.

That this was a military expedition, designed to make war against the government of Spain, would seem to the court to be free from reasonable doubt. The question, however, is one for your determination alone, and I submit it to you as such, reminding you that the responsibility of deciding it rests upon you only.

If you find that this was not a military expedition, or, rather, if you are not fully satisfied that it was, your verdict will be for the defendants, without going further. If, on the other hand, you find that it was a military expedition, intended to make war against the government of Cuba, then you must pass upon the second question stated, to wit: Did the defendants with knowledge of the fact aid in carrying out its purpose of going to Cuba? They transported the men with their arms, ammunition and provisions. Did they enter upon this service here, with knowledge of the fact that the men constituted a military expedition to fight against the government of Cuba?

I will not dwell on the evidence relating to this question. It has been very fully stated and commented upon by counsel. You will consider the circumstances under which the defendants started from this port, taking extra boats, clearing for Port Antonio, Jamaica, turning off of their course at the breakwater, (at the mouth of the Delaware) going to Barnegat and there taking a large body of men with arms concealed in boxes, and provisions, on board, together with two additional boats, under orders to put the men off with their boats, arms and provisions where they might request. The defendants took them down to the coast of Cuba, extinguishing all lights about the ship as she approached, and there launched the boats and set the men with their arms and provisions adrift to reach the shore somewhere, abandoning the undertaking to tow them further down and hurrying away because of the appearance of a supposed Spanish man-of-war.

Thus you see what the defendants did. From this and any other testimony bearing on this subject you must determine whether they understood what the expedition and its object were, and had arranged and provided for its transportation, when they left Philadelphia or left our shores within the three-mile limit stated. If they were ignorant on this subject until they anchored off Barnegat Light, the point being according to the testimony beyond the jurisdictional limits of the United States, no offense was committed, as I have before stated, against the laws of this country.

The question, therefore, is, did the defendants understand they were to carry this expedition and had provided for it, and understand what the expedition was before leaving here? As you have

seen, they took on two extra boats before starting and cleared for Port Antonio, Jamaica, and turned off of their course at the break-water, (the captain explaining this, to which explanation you will give whatever weight you deem it to be worth). When the men came to the ship off of Barnegat there is no evidence that the captain or any one of the defendants expressed or exhibited any surprise. It was then manifest that the service required was to carry men and arms to Cuba (the captain says he then so understood it) a most hazardous undertaking. Is it probable that the defendants would have risked themselves and their ship in this service if they had not been prepared for it by previous arrangement, and have done it without demurring or hesitating? Again, is it likely that those in charge of the expedition would have risked bringing the men and the property to that point on the mere chance that the defendant would take the risk of carrying them and the property to Cuba, without arranging for it beforehand? If the defendants had refused, as it was their right to refuse, and it would seem certain, or at least extremely probable, that they would refuse this most hazardous service, if previous arrangement had not been made, what would have been the situation of the men and the property? The expedition would have failed. The men would have been subject to arrest and the property to sacrifice. Is it probable that those in charge of such an enterprise would take the men and property to this point without having secured certain means of transportation for it in advance? The captain says he was ignorant of the service required of him until he reached the point near Barnegat. You must judge whether he should be believed or not, and from all the evidence must determine whether the defendants left here with knowldge of and provision for what they were about to do.

I now submit the case to you, reminding you of its importance. If the evidence of the defendants' guilt is not entirely clear, they should be acquitted. If it is thus clear, they should certainly be convicted. No sympathy nor prejudice must be allowed to influence your minds in passing on this case. We have nothing to do with the controversies between the people of Cuba and the government of that island. We are concerned only with the execution of the law in this case. We have only to consider whether the statute to which your attention has been called has been violated. It is our duty to see that the law is honestly and justly executed, that is all. The peace and safety of the community so manifestly depend upon the faithful and honest administration of the law that no man can fail to see it. We are suffering to-day as probably no other people suffers from lawlessness, from mobs, lynch law, murder, violation of trusts, as the result of want of faithfulness in executing the law.

You will take the case and decide it with a careful regard to the rights of the defendants.

The jury returned a verdict of guilty as to each defendant. Motions for new trial and in arrest of judgment were made March 3, and overruled March 17, 1896, and defendants were then sentenced as follows: Wiborg (master)—Fine, $300; imprisonment, one year and four months. Peterson (mate)—Fine, $100; imprisonment, one year. Johansen (second mate)—Fine, $100; imprisonment, one year.